IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JESSICA VAN NESS, for her minor child, C.V., )
                                                                  )
       Plaintiff,                               )
                                                                  )
       v.                                           )   Cause No. 3:14-CV-02076-CAN
                                                                   )
CAROLYN COLVIN,                           )
Acting Commissioner of Social Security,   )
                                                                  )
       Defendant.                             )

**OPINION AND ORDER**

Plaintiff Jessica Van Ness ("Van Ness"), for her minor child, C.V., filed a complaint in this Court seeking reversal or remand of the final decision denying C.V.'s application for child's Supplemental Security Income ("SSI"). As analyzed below, the Defendant's decision as Acting Commissioner of Social Security ("Commissioner") was not supported by substantial evidence.

## I.    PROCEDURE

On April 10, 2012, Van Ness filed an application for SSI with the Social Security Administration ("SSA"), alleging C.V.'s disability beginning January 1, 2004. The SSA denied Van Ness's claim initially on May 23, 2012, and again upon reconsideration on July 17, 2012. On August 2, 2012, Van Ness filed a request for an administrative hearing. The hearing was held on September 9, 2013, before an administrative law judge ("ALJ") where both Van Ness and C.V. appeared and testified. On November 5, 2013, the ALJ issued his decision finding that C.V. was not disabled at Step Three of the disability evaluation process and denied Van Ness's application for SSI benefits. On December 10, 2013, Van Ness filed a request for review of the ALJ's decision with the Appeals Council. On October 28, 2014, the Appeals Council denied Van Ness's request for review, making the ALJ's decision the final decision of the

Commissioner. On December 18, 2014, Van Ness filed a complaint in this Court seeking reversal or remand of the Commissioner's decision. On July 6, 2015, Van Ness filed her Opening Brief. Thereafter, on October 7, 2015, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying C.V. benefits. Van Ness filed her reply brief on October 21, 2015. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. RELEVANT BACKGROUND

C.V. was born on September 7, 2002, and was 9-years old on the date of the SSI application. C.V. sought child's SSI based upon legal blindness in the left eye, poor vision in the right eye, albinism, behavior problems, ADD, and ADHD.

At the hearing, C.V. testified regarding his condition. Van Ness also testified in response to questioning by the ALJ and her counsel. After the hearing, the ALJ issued a written decision reflecting findings based on the three-step sequential evaluation process prescribed by the SSA's regulations to determine whether an individual under the age of 18 is disabled.[1] At Step One, the ALJ found that C.V. had not been engaged in substantial gainful activity since the application date of April 10, 2012, which governs the start of any SSI benefits. 20 C.F.R. § 416.335. At Step Two, the ALJ found that C.V. has the following severe impairments: oculocutaneous albinism[2], nystagmus[3], ADHD, and learning disorder. At Step Three, the ALJ found that C.V. did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ further found that C.V. did not have an impairment or

---

[1] ALJs must apply a three-part test in determining whether a child is entitled to disability benefits. 20 C.F.R. § 416.924(a); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486-87 (7th Cir. 2007); 20 C.F.R. § 416.902.
[2] Oculocutaneous albinism is a disorder characterized by a lack of pigment in the eye. *See* Stedmans Medical Dictionary 19690 (2014).
[3] Nystagmus is a condition involving involuntary rhythmic oscillation of the eyeballs. Stedmans Medical Dictionary 619540 (2014).

2

combination of impairments that functionally equals the severity of the listings. In so doing, the ALJ assessed C.V.'s functioning in terms of the six domains identified in 20 C.F.R. § 416.926a(b)(1). Based on that assessment, the ALJ concluded that C.V. had not been disabled, as defined in the Social Security Act, since April 10, 2012.

## III. ANALYSIS

### A. Standard of Review

On judicial review of the final decision of the SSA, the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, an ALJ's findings will be reversed only if they are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). Substantial evidence may be less than the weight of the evidence, but is more than a mere scintilla. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

To determine whether substantial evidence exists, the Court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the Court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). In reaching a decision, the ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony or evidence.

3

*Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). If the ALJ's decision is so poorly articulated as to prevent meaningful review, the case must be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

### B. Issues for Review

In this case, the Court must not ascertain whether C.V. is disabled, but rather, whether the ALJ's disability determination for C.V. is supported by substantial evidence. Van Ness contends, in part, that the ALJ's functional equivalency assessment for C.V. is not supported by substantial evidence because the ALJ failed to consider all of the relevant evidence and failed to consider the effect of C.V.'s impairments across all domains. Van Ness also contends that the ALJ erred in his credibility finding. Each of these arguments is addressed in turn.

#### 1. The ALJ's Functional Equivalency Determination

To determine whether a child's impairment is the functional equivalent of a listing, an ALJ evaluates its severity in six domains: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for self, and 6) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). Functional equivalence exists and a child is entitled to benefits if the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one. 20 C.F.R. § 416.926a(a). An ALJ is required to consider the interactive and cumulative effects of a claimant's impairment or multiple impairments, including impairments that are not severe, in any affected domain. 20 C.F.R. § 416.926a(c).

The ALJ, here, concluded that C.V. only had a marked difficulty in the domain of health

and physical well-being and therefore did not qualify for SSI. Van Ness is convinced, however, that C.V. also has marked difficulty in moving about and manipulating objects and that the ALJ did not support his conclusions with substantial evidence. In addition, Van Ness contends that the ALJ failed to adequately consider the effects of C.V.'s impairments across all domains. The Commissioner argues that the ALJ's functional equivalency determination is supported by substantial evidence. The Court is not persuaded. For the reasons set forth below, remand is necessary.

### a. The Domain of Moving About and Manipulating Objects

Regarding the domain of moving about and manipulating objects, Van Ness argues that the ALJ failed to consider evidence of C.V.'s photosensitivity and his inability to engage in physical activities. Van Ness alleges that the ALJ improperly relied solely on C.V.'s expressed enjoyment of sports as the basis of finding a less than marked limitation. Doc. No. 21 at 7. Addressing this domain, the ALJ's brief analysis and conclusion is as follows:

> <u>The claimant has less than marked limitation in moving about and manipulating objects</u>. At the hearing, the claimant testified that he has trouble running at times because of his diminished eyesight. The claimant then stated that he enjoys playing sports and videogames that shows an ability to move about and manipulate objects. The claimant also indicated that he sees larger objects without any difficulty (Hearing Testimony). In the Function Report, the claimant's mother stated that he walks, runs, throws a ball, and uses scissors without any trouble. (Exhibit 1E). Accordingly, the undersigned finds that the claimant has less than marked limitations in this domain, as it is consistent with the record.

Doc. No. 13 at 23-24.

The domain of moving about and manipulating objects considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. 20 C.F.R. § 416.926a(j); SSR 09-6p, 2009 WL 396028. These activities may require gross motor skills, fine motor skills, or a combination of both. *Id*. Limitations in this domain can be

associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments. *Id*. When making assessments, an ALJ may not pick and choose the evidence that favors his final decision. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Notably in *Murphy v. Astrue*, a minor SSI claimant sought benefits based on his ADHD. 496 F.3d 630, 632 (7th Cir. 2007). Based on the record and the testimony of a consultative psychologist, the ALJ found that the claimant had a marked limitation in the domain of interacting and relating to others. *Id*. The psychologist stated that while he believed the claimant may have a marked limitation in the domain of attending and completing tasks, ultimately, he could not come to a conclusion without review of the current behavioral evaluations from the claimant's school, which were not then available. *Id*. After obtaining those evaluations, the ALJ ruled that the claimant did not have a marked impairment in that domain and, thus, was not disabled. *Id*. at 633.

On review in *Murphy*, the court determined that the ALJ ignored substantial evidence in support of a finding of disability when considering the domain of attending and completing tasks. *Id*. at 634. The court noted an ALJ's duty to fully develop the record before drawing any conclusions and his duty to adequately articulate his analysis, so that the court can follow his reasoning. *Id*. The ALJ did not explain why he gave no weight to portions of the school records addressing the claimant's attention, concentration, and work difficulties, which supported a finding of disability. *Id*. The court remanded the case to the SSA and, in so doing, provided:

> The ALJ did little to counter this evidence. He noted only that the school documents reflected that [the claimant] did not talk excessively, did not interrupt or intrude, did not move about unexpectedly, knew the answers to questions when called upon, was cooperative, had a good sense of humor, tried to follow rules, and wanted to do well in his studies. These traits may well be accolades for [the claimant], but the ALJ did not explain how or why they trump the evidence of his inability to attend and complete tasks.

6

> . . [T]he ALJ disregarded evidence of [the claimant]'s disability without identifying any support for his conclusion.

*Id*. at 634-35.

Here, like in *Murphy*, without explanation, the ALJ disregarded evidence contrary to his conclusion that C.V. did not have a marked limitation in the domain of moving about and manipulating objects. Central to the ALJ's determination in this domain was his finding that C.V.'s enjoyment of playing sports and videogames "shows an *ability* to move about and manipulate objects." Doc. No. 13 at 23. (emphasis added). The ALJ's finding demonstrates a fundamental misapprehension of the applicable standards in this domain. 20 C.F.R. § 416.926a(j)(2)(iv) provides that a school-age child's "*increasing strength and coordination* should expand [his] ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." (emphasis added). Conversely, here, the ALJ seems to have equated C.V.'s professed enjoyment of playing sports and videogames with evidence of his increased strength and coordination. When considering functional equivalence across the domains, ALJs must:

> look at how appropriately, effectively, and independently you perform your activities compared to the performance of other children your age who do not have impairments. . . These domains are broad areas of functioning intended to capture all of what a child *can or cannot do*.

20 C.F.R. § 416.926a(b)-(b)(1). (emphasis added). It is the claimant's ability to perform skills and activities, rather than his enjoyment thereof, which is determinative. The ALJ then notes that "[i]n the Function Report, the claimant's mother stated that he walks, runs, throws a ball, and uses scissors *without any trouble*." Doc. No. 13 at 23. (emphasis added). There are a number of problems with the ALJ's statement.

First, the Function Report referenced is a form consisting of a series of check boxes for the

most part. *See* Doc. No. 13 at 130-39.  Forms comprised of check boxes with minimal explanation are generally considered weak evidence.  *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  The form asks if "the child's physical abilities" are "limited," to which Van Ness checked "YES."  Doc. No. 13 at 135.  It then provides "[i]f "yes" or "not sure" please tell us what the child does or can do by checking "yes" or "no" for each of the following."  *Id*.  The form goes on to provide a list of skills, including, but not limited to, "Walk," "Run," "Throw a ball," and "Use scissors," to which Van Ness checked "YES" indicating that C.V. could perform those skills.  *Id*.  Checking a form box does not provide information about a child's proficiency in performing any of the listed skills and Van Ness did not provide any information regarding C.V.'s proficiency therein.  Thus, contrary to the ALJ's assertion, the Function Report is not evidence of Van Ness reporting that C.V. could perform the listed skills "without any trouble."

Second, other evidence shows that C.V. indeed does have trouble with the listed skills and demonstrates that his strength and coordination is not expanding.  On April 23, 2012, just twelve days after completing the function report, Van Ness completed the Activities of Daily Living documents in which she reveals C.V.'s difficulties with such skills.  Van Ness reported that C.V. has difficulties including tripping a few times a day, bumping into things, sometimes bumping into other children when walking or running, and frequently hitting other people on accident when playing ball.  Doc. No. 13 at 157, 160.  At the hearing, Van Ness also testified that while C.V. likes physical education, "he's not very good at it."  Doc. No. 13 at 58.  She also stated that when he plays sports in physical education at school, he comes home with injuries because his vision causes him to trip over his own feet or other people's feet.  Doc. No. 13 at 60.  With regard to his videogame play, Van Ness noted that C.V. is only able to play if he sits

8

approximately six inches away from a large TV screen. Doc. No. 13 at 55, 70. The ALJ did not address any of this evidence.

Third, the ALJ did not address evidence of exemplary activities in assessing conflicting evidence about C.V.'s ability to move about and manipulate objects. Based on Social Security Ruling 09-6p, ALJs are encouraged to examine certain physical activities in analyzing the domain of moving about and manipulating objects. SSR 09-6p describes the following exemplary activities:

> All of these physical actions require children to exhibit varying degrees of strength, coordination, dexterity, and place to accomplish a given task or activity (for example, *getting dressed*). They also require children to have a sense of where their bodies are in relation to the environment and an understanding of how their bodies move in space (for example, *jumping rope*). In addition, gross and fine motor skills require the integration of sensory input with motor output (for example, *seeing a ball and catching it*). Those skills also require the capacity for motor planning and motor memory, that is, the ability to plan, remember, and execute controlled movement (for example, *riding a bicycle*).

(emphasis added). In reaching a decision, the ALJ need not provide a complete written evaluation of every piece of testimony or evidence, but he must build a logical bridge from the evidence to his conclusion. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In his opinion, the ALJ correctly acknowledges that ALJs are not required to develop evidence about the exemplary activities set forth in SSR 09-6p, and they do not necessarily describe marked or extreme limitation in the domain. Doc. No. 13 at 23; SSR 09-6p (The examples are provided to "assist adjudicators," however, they "are not all-inclusive, and adjudicators are not required to develop evidence about each of them."). Such examples can, however, serve as a frame of reference for determining whether children are functioning

typically for their age with respect to the development and use of gross and fine motor skills. SSR 09-6p. As noted above, the ALJ did not address the contrary evidence regarding the example of C.V.'s ability to play with a ball. Moreover, on the same page of the Function Report cited by the ALJ, it is also noted that C.V. cannot perform the exemplary activities of jumping rope or riding a bike. Doc. No. 13 at 23, 135. The statement two pages later in the report that C.V. cannot button clothes by himself touches on the example of his ability to get dressed. Doc. No. 13 at 137. Again, while the ALJ was not required to address each of these exemplary activities, closer consideration of the kinds of physical actions that underpin those activities is necessary in light of the conflicting evidence. The Court is unable to trace the path of the ALJ's reasoning. And, by failing to acknowledge his consideration or weighing of the contrary evidence, the ALJ has failed to build a logical bridge to his conclusion that C.V. has less than marked limitation in the domain of moving about and manipulating objects.

Here, like in *Murphy*, evidence of C.V.'s enjoyment of activities cannot trump evidence of his inability to perform those activities. Abundant conflicting evidence, which was not analyzed, demonstrates that C.V. did indeed have trouble moving about and manipulating objects. The ALJ has made improper inferences. For those reasons, remand for further consideration is required.

**b.  Effect of Impairments Across All Domains**

Next, Van Ness makes an argument that the ALJ did not consider the effect of all of C.V.'s impairments across each of the domains. The Social Security rulings and regulations provide that limitations imposed by an impairment must be considered in any affected domain. *See* SSR 09–lp, 2009 WL 396031 (explaining that the "whole child" approach considers "all of the child's impairments singly and in combination – the interactive and cumulative effects of the

10

impairments – because it starts with a consideration of actual functioning in all settings."); 20 C.F.R. § 416.926a(c) (providing for evaluation of "interactive and cumulative effects of an impairment or multiple impairments"). The regulations recognize that an impairment "may have effects in more than one domain" and that the limitations for an impairment must be evaluated "in any affected domain(s)." 20 C.F.R. § 416.926a(c).

In his opinion, the ALJ acknowledged the requirement to consider the interactive and cumulative effects of impairments across domains. Doc. No. 13 at 14. And, the ALJ generally asserts that he did make such considerations. Doc. No. 13 at 17. However, within the discussion of each of the six domains, the ALJ's analysis seems to alternate between brief generalized analysis of singular impairments, without any express mention of impairments, their interaction, or their cumulative effects. *See* Doc. No. 13 at 20-25. Alternating between conditions and failing to "clearly identify which impairments were considered leaves [the Court] without means to review [the ALJ's] conclusion." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). The ALJ has not adequately articulated his consideration of C.V.'s impairments across all domains. Thus, remand is required for this reason as well.

### 2. The ALJ's Credibility Assessment

Van Ness contends that the ALJ's credibility assessment was erroneous. An ALJ must follow a two-step process, determining first whether there are underlying medically determinable physical or mental impairments that could be reasonably expected to produce the claimant's symptoms, and second determining whether the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See* 20 C.F.R. § 416.929; SSR 96-4p, 1996 WL 374187; SSR 96-7p, 1996 WL 374186. Here, the ALJ found that C.V.'s medically determined impairments could be reasonably expected to cause

his alleged symptoms, but the ALJ did not find "the statements concerning the intensity, persistence, and limiting effects of [those] symptoms [to be] entirely credible." Doc. 13 at 18.

An ALJ's credibility finding is entitled to great deference and should be upheld unless patently wrong. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the court] declare it to be 'patently wrong.'" *Elder*, 529 F.3d at 413-14 (internal citations omitted). An ALJ must only give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how he assessed the claimant's testimony. *See* SSR 96-7p. An ALJ complies with SSR 96-7p, and the Court will affirm his finding, so long as he "gives specific reasons that are supported by the record." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). An ALJ's credibility finding need not be explicit. *Arbogast v. Bowen*, 860 F.2d 1400, 1406 (7th Cir. 1988). He considers the record as a whole and is not required to conduct a point-by-point credibility analysis. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

Van Ness argues that the ALJ's credibility determination is "meaningless boilerplate," which is not supported by specific reasons, and is patently wrong. The Commissioner asserts that the ALJ did identify specific reasons for his credibility determination, including several purported inconsistencies between objective medical evidence and Van Ness's and C.V.'s testimony, and contends that the "boilerplate" argument is unavailing. Of particular note, the Commissioner argues that "the ALJ pointed out the inconsistencies between testimony from [C.V.] and his mother about . . . his ability to move about and manipulate objects." Doc. No. 26 at 11. As was analyzed above, at least with respect to the domain of moving about and

manipulating objects, the purported inconsistencies in the testimony are not born out by the record.  Though, considering the entire record, the Court cannot say that the ALJ's credibility determination is patently wrong.  Nevertheless, as the ALJ reexamines the domain of moving about and manipulating objects and the effect of C.V.'s impairments across all domains on remand, the Court encourages the ALJ to also reexamine and expound upon on his credibility analysis.

## IV. CONCLUSION

For the reasons stated above, the Court finds that (1) the ALJ's finding of less than marked limitation in the domain of moving about and manipulating objects is not supported by substantial evidence, and (2) the ALJ has failed to adequately articulate his consideration of the effect of C.V.'s impairments across all domains.  Therefore, the Court now **GRANTS** Van Ness's request to remand this case.  [Doc. No. 21].  This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated this 23rd day of March, 2016

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
